JOHN H. McCARTHY, trustee,[1] vs. PLANNING BOARD OF EDGARTOWN.

Dukes County.  March 6, 1980. — July 2, 1980.

Present: HENNESSEY, C.J., QUIRICO, BRAUCHER, KAPLAN, & WILKINS, JJ.

*Martha's Vineyard Commission.  Edgartown.  Subdivision Control.*

In the absence of a town's explicit repeal of a regulation adopted by the
    Martha's Vineyard Commission, the regulation remained in force in
    the town after the town's withdrawal from commission membership.
    [88-89]

CIVIL ACTION commenced in the Superior Court Department on February 28, 1979.

The case was heard by *Mitchell, J.,* on a motion for summary judgment.

The Supreme Judicial Court granted a request for direct appellate review.

The case was submitted on briefs.

*Edward W. Kirk* for the defendant.

*Eugene L. Tougas* for the plaintiff.

BRAUCHER, J.  The Martha's Vineyard Commission (MVC) was created by St. 1974, c. 637, superseded by St. 1977, c. 831.  In December, 1976, MVC adopted regulations for a "Road District," affecting the town of Edgartown.  See *Island Properties, Inc.* v. *Martha's Vineyard Comm'n,* 372 Mass. 216, 223 (1977).  In April, 1978, pursuant to St. 1977, c. 836, the voters of Edgartown voted to withdraw from MVC membership.  This appeal presents the question whether an MVC regulation remained in force in Edgartown after the withdrawal.  We hold that it did.

On January 25, 1979, the plaintiff submitted a plan to the Edgartown planning board (board) for endorsement "Ap-

---

[1] Trustee of South Shore Trust.

proval Under the Subdivision Control Law Not Required," pursuant to G. L. c. 41, § 81P. On February 8, 1979, the board voted to deny the requested endorsement, and the plaintiff appealed to the Superior Court under G. L. c. 41, § 81BB. On cross motions for summary judgment the judge ruled that MVC regulations were no longer in force in Edgartown and ordered the board to make the endorsement. The board appealed to the Appeals Court, and we granted the board's application for direct appellate review.

The plaintiff claims that its plan does not show a "subdivision" as defined in G. L. c. 41, § 81L, because every lot had "frontage" on a public way "of at least such distance as is then required by zoning or other . . . by-law, if any, of said . . . town for erection of a building on such lot, and if no distance is so required, such frontage shall be of at least twenty feet." See *Waldor Realty Corp.* v. *Planning Bd. of Westborough*, 354 Mass. 639, 641 (1968). The lots shown on the plaintiff's plan are in the "R-20 Residential District." In that district the zoning by-law of Edgartown provides a minimum requirement of 100 feet "lot width"; the by-law also requires new lots to be in accordance with the board's subdivision regulations. Those regulations require frontage no less than twenty feet on any way. Each of the lots in issue has "frontage" of at least 100 feet on Herring Creek Road, a public way.

The MVC "Road District" regulations apply to Herring Creek Road, and require, with exceptions not here pertinent, that "any additional vehicular access to the public road must be at least 1,000 feet measured on the same side of the road from any other vehicular access." The board contends that such a requirement deprives the lots in issue of vehicular access to the public way, with the result that they do not have the type of "frontage" called for by G. L. c. 41, § 81L, defining "subdivision." We agree. Whatever the meaning of "frontage" in a particular town by-law, we have read the definition of "subdivision" to refer to "frontage" in terms of the statutory purpose, expressed in § 81M, to provide "adequate access to all of the lots in a subdivision by ways that

will be safe and convenient for travel." See *Gifford* v. *Planning Bd. of Nantucket*, 376 Mass. 801, 807 (1978). Cf. § 81R, referring to "frontage or access requirements." The Appeals Court has recently held that lots abutting a limited-access highway did not have "frontage" on a way for the purposes of § 81L. *Hrenchuk* v. *Planning Bd. of Walpole*, 8 Mass. App. Ct. 950 (1979).

Thus we come to the question whether the MVC regulation remains in force. Under St. 1974, c. 637, § 11, third paragraph, as in force in 1976, such regulations were to be "incorporated, without regard to the provisions of section thirty-two of chapter forty of the General Laws [relating to approval by the Attorney General and to publication], by the municipality into the official ordinances, by-laws and maps of the municipality" and "administered by the municipality as if they were part of its development ordinances and by-laws." The fourth paragraph of § 11 provided, "A municipality may amend or rescind regulations in the manner provided for adoption or approval." Cf. St. 1977, c. 831, § 10, ninth and tenth paragraphs, as amended by St. 1979, c. 319, § 6. Under § 20 of the 1977 statute, effective December 21, 1977, regulations duly made under the 1974 statute and in effect immediately prior to the effective date of the 1977 statute continue in full force and effect until superseded, revised, rescinded or cancelled.

In *Woods Hole, Martha's Vineyard & Nantucket S.S. Auth.* v. *Martha's Vineyard Comm'n*, 380 Mass. 785, 804 (1980), we said that MVC regulations are "more analogous" to local zoning by-laws than to regulations of State agencies, "except that they are promulgated on a regional basis and then incorporated into town ordinances and by-laws." But MVC regulations are not to be "exclusively characterized" as zoning laws. See *Island Properties, Inc.* v. *Martha's Vineyard Comm'n*, 372 Mass. 216, 227 (1977). We pass the question whether such a regulation could have been repealed by a member town without MVC approval before the 1979 legislation clarified the matter. Cf. ALI Model Land Development Code § 7-206 (Proposed Official Draft 1975).

Regardless of the answer to that question, it is clear to us that after Edgartown withdrew from the MVC it could have repealed the regulation unilaterally by action in the usual manner to amend its zoning by-laws. It has not done so.

We must presume that the Legislature was aware, when it authorized the Edgartown withdrawal, that there were MVC regulations that might be affected. See *Prudential Ins. Co. of America* v. *Boston*, 369 Mass. 542, 546 (1976). There was no explicit repeal, and repeals by implication are not favored. *Shelist* v. *Boston Redevolpment Auth.*, 350 Mass. 530, 533 (1966). Thus the MVC regulation in issue remains in effect.

*Judgment reversed.*