DIANE F. HUTCHINSON, trustee[1], vs. PLANNING BOARD
OF HINGHAM.

Plymouth. November 14, 1986. — January 15, 1987.

Present: DREBEN, KAPLAN, & SMITH, JJ.

*Subdivision Control,* Approval not required, Frontage on public way. *Way,*
Public: subdivision control.

With respect to a plan for the division of a certain parcel of land into five lots,
for which the owner sought a town planning board's endorsement under
G. L. c. 41, § 81P, the Subdivision Control Law, "approval not re-
quired," a judge correctly concluded that the board, having assigned as
its reason inadequacy of vehicular access to the proposed lots, had
exceeded its authority in withholding the endorsement, where the judge
found that each of the lots would have sufficient frontage on a public
way to provide the adequate vehicular access contemplated by G. L.
c. 41, § 81M. [421]

CIVIL ACTION commenced in the Superior Court Department
on July 3, 1985.

The case was heard by *Chris Byron,* J.

*Chester A. Janiak* for the defendant.

*F. Anthony Mooney* for the plaintiff.

DREBEN, J. This is an appeal by the planning board of
Hingham (board) from a judgment of the Superior Court (G. L.
c. 41, § 81BB) annulling a decision of the board which had
refused an "approval not required" endorsement under G. L.
c. 41, § 81P. We affirm.

The plan submitted by the plaintiff landowner divided a
17.74 acre parcel on Lazell Street in Hingham into five lots.
The parties had stipulated that Lazell Street is a public way
"used by the public and maintained by the Town of Hingham,"
that the zoning requirements in that zone for single family resi-

---

[1] The plaintiff Hutchinson is trustee of the First Hingham Realty Trust.

dences are "40,000 square feet in area and 150 feet frontage," and that each lot on the plaintiff's plan met the Hingham zoning by-law requirements. Nonetheless, the board declined to endorse the plan "approval not required," giving the following reasons:

"1. Lazell Street is a way in existence when the Subdivision Control Law became effective and does not have sufficient width, suitable grades, and adequate construction to provide for the needs of vehicular traffic in relation to the proposed use of the land;

"2. the frontage does not provide safe and adequate access to a public way and is, therefore, not adequate frontage within the meaning of the Subdivision Control Law . . . ."

The plaintiff, relying on G. L. c. 41, § 81P, claims that her proposal is not a subdivision within the meaning of the Subdivision Control Law and that the board exceeded its authority in refusing the endorsement. General Laws c. 41, § 81P, as appearing in St. 1963, c. 363, § 1, provides in relevant part:

"Any person wishing to cause to be recorded a plan of land situated in a city or town in which the subdivision control law is in effect, who believes that his plan does not require approval under the subdivision control law, may submit his plan to the planning board of such city or town . . . and, if the board finds that the plan does not require such approval, *it shall forthwith,* without a public hearing endorse thereon or cause to be endorsed thereon . . . . the words 'approval under the subdivision control law not required . . .' *Such endorsement shall not be withheld unless such plan shows a subdivision*" (emphasis supplied).

The definitional section, § 81L, in the twelfth par., as amended through St. 1965, c. 61, defines a "subdivision" as the "division of a tract of land into two or more lots" but expressly provides that:

"the division of a tract of land into two or more lots shall not be deemed to constitute a subdivision within the mean-

ing of the subdivision control law if, at the time when it is made, every lot within the tract so divided has frontage on (*a*) a public way or a way which the clerk of the city or town certifies is maintained and used as a public way, or (*b*) a way shown on a plan theretofore approved and endorsed in accordance with the subdivision control law, or (*c*) a way in existence when the subdivision control law became effective in the city or town in which the land lies, having, in the opinion of the planning board, sufficient width, suitable grades and adequate construction to provide for the needs of vehicular traffic in relation to the proposed use of the land abutting thereon or served thereby . . ."

Citing *Perry* v. *Planning Bd. of Nantucket,* 15 Mass. App. Ct. 144 (1983), and *Hrenchuk* v. *Planning Bd. of Walpole,* 8 Mass. App. Ct. 949 (1979), the board argues that, even if a way falls within the definition of § 81L, that is not enough. "[I]t is also necessary that a planning board determine that the way in question . . . satisf[ies] the requirements of G. L. c. 41, § 81M,[2]

---

[2] General Laws c. 41, § 81M, as amended through St. 1969, c. 884, § 2, in relevant part, reads:

"The subdivision control law has been enacted for the purpose of protecting the safety, convenience and welfare of the inhabitants of the cities and towns in which it is, or may hereafter be, put in effect by regulating the laying out and construction of ways in subdivisions providing access to the several lots therein, but which have not become public ways, and ensuring sanitary conditions in subdivisions and in proper cases parks and open areas. The powers of a planning board and of a board of appeal under the subdivision control law shall be exercised with due regard for the provision of adequate access to all of the lots in a subdivision by ways that will be safe and convenient for travel; for lessening congestion in such ways and in the adjacent public ways; for reducing danger to life and limb in the operation of motor vehicles; for securing safety in the case of fire, flood, panic and other emergencies; for insuring compliance with the applicable zoning ordinances or by-laws; for securing adequate provision for water, sewerage, drainage, underground utility services, fire, police, and other similar municipal equipment, and street lighting and other requirements where necessary in a subdivision; and for coordinating the ways in a subdivision with each other and with the public ways in the city or town in which it is located and with the ways in neighboring subdivisions."

which . . . include the requirement that the way be safe for motor vehicle travel."[3]

The board misapprehends the *Perry* and *Hrenchuk* decisions. Those cases rest on the reasoning of *Gifford* v. *Planning Bd. of Nantucket,* 376 Mass. 801 (1978), which held that as an aid in interpreting the exclusions of §§ 81L and 81P the court may look to § 81M as elucidating the purposes of those exclusions. *Id.* at 807-808. *Perry* at 151-152. See also *Rettig* v. *Planning Bd. of Rowley,* 332 Mass. 476, 480-481 (1955). Thus, even though a statutory exemption (e.g., frontage[4] on a public way) of § 81L is technically or formally satisfied, if, in fact, there is no practical access to the lots, § 81L will not apply. The *Gifford* court pointed out that in "conformance with [the] text" of § 81M, "we have emphasized repeatedly that a principal object of the [Subdivision Control Law] is to insure efficient vehicular access to each lot in a subdivision, for safety, convenience and welfare depend critically on that factor." Where approval is not required under the statute, "it is because the vital access is reasonably guaranteed in another manner. The guaranty is expressed in §§ 81L and 81P of the statute in terms of a requirement of sufficient frontage for each lot on a public way. In the ordinary case, lots having such a frontage are fully accessible and, as the developer does not contemplate the construction of additional access routes, there is no need for supervision by the planning board on that score." *Id.* at 807. In *Gifford,* some of the lots were practically inaccessible and could not be reached by fire or other emergency vehicles. The court emphasized that it was concerned with "a quite exceptional case," *id.* at 808, and that to "hold that such a plan needs approval is not to interfere with the sound application of the 'approval . . . not required' technique." *Id.* at 809.

In *Hrenchuk* v. *Planning Bd. of Walpole,* 8 Mass. App. Ct. at 949, the frontage on the public way was on a limited access highway "and the boundaries of the plaintiff's proposed lots . . . provide[d] no means of vehicular passage between the

---

[3] The quotation is from the board's brief.

[4] As specified in the applicable zoning by-law.

highway and any of the lots." In that context we said, citing *Gifford,* "The required access must take the form of (1) frontage on one of the three types of ways specified in G. L. c. 41, § 81L, . . . , and (2) a planning board's determination under § 81P that adequate access, as contemplated by § 81M, otherwise exists."

Similarly, in *Perry,* 15 Mass. App. Ct. at 154, where the public way (Oakland Street) relied on did not, in fact, exist on the ground, we held that the access goals of § 81M were not satisfied. We also remanded to the board the question whether another public way (Midland Avenue), although existing on the ground, furnished acceptable access. Since the judge had made no findings "in terms of the way's dimensions,. surface, or suitability for travel by ordinary and public safety vehicles," *id.* at 154-155, we could not determine whether Midland Avenue provided the access normally provided by a public way.

Central to the reasoning of the *Gifford, Hrenchuk,* and *Perry* cases, is the premise that where the exclusions in 81L, twelfth par., satisfy "the quality of access [those kinds of ways] normally provide," approval may not be withheld. *Perry* at 150. Where such access is provided, the board does not have "the same duties and responsibilities . . . as it has when it is called upon to approve a subdivision," *Smalley* v. *Planning Bd. of Harwich,* 10 Mass. App. Ct. 599, 602 & n.5 (1980), and may not deny the endorsement. Compare *North Landers Corp.* v. *Planning Bd. of Falmouth,* 382 Mass. 432, 437 (1981) (where subdivision is involved, adequacy of public way may be considered).

This limitation is made clear in our cases. In *Gallitano* v. *Board of Survey & Planning of Waltham,* 10 Mass. App. Ct. 269, 273 (1980), and again in *Perry, supra* at 152, we said, "The *Gifford* case . . . was not intended . . . to broaden the powers of planning boards . . . [an endorsement under § 81P may not be denied] whenever municipal officials are of the opinion that vehicular access could be better provided for." See *Perry* at 152-153.

In sum, where there is the access that a public way normally provides, that is, where the "street [is] of sufficient width and

suitable to accommodate motor vehicle traffic and to provide access for fire-fighting equipment and other emergency vehicles," *North Landers Corp.* v. *Planning Bd. of Falmouth,* 382 Mass. at 441, quoting from *Noble* v. *Township Comm. of Mendham,* 91 N.J. Super. 111, 118 (1966); see also *Gifford* at 808, the goal of access under 81M is satisfied, and an 81P endorsement is required.[5]

We turn now to the findings of the judge. He found that Lazell Street is a paved public way, that, except for a portion which is one-way, it is twenty to twenty-one feet wide, about the same width as the other streets in the area, and that it can "provide adequate access to all the proposed lots for the owners, their guests, police, fire, and other emergency vehicles."[6] These findings bring Lazell Street within the "specific objective criteria . . . chosen by the Legislature for the quality of access," *Perry* at 150, which entitle a landowner to an 81P endorsement.

*Judgment affirmed.*

---

[5] We note that although the landowner relied on subsection (*a*) of the twelfth par. of § 81L, and not on subsection (*c*), the board in refusing the endorsement used the language of subsection (*c*), that is, "a way in existence when the subdivision control law became effective," to describe the inadequacies of the public way (Lazell Street). If the board could apply to subsections (*a*) and (*b*) of 81L the broader powers given to it to determine the adequacy of the ways described in subsection (*c*), the first two exemptions would be rendered superfluous.

[6] The judge also found that the road "is as safe to travel upon as any of the hundreds of comparable rural roads that criss-cross the entire Commonwealth." We do not reach the board's arguments on traffic safety as we do not deem them relevant. We note that even if those arguments were to be considered, the judge's findings on traffic safety are not clearly erroneous and are dispositive. The board's contentions to the contrary are without merit.