ROBERT FOX, trustee,[1] vs. PLANNING BOARD OF MILTON.

Norfolk.  May 11, 1987. — August 3, 1987.

Present: GREANEY, C.J., CUTTER, & ARMSTRONG, JJ.

*Subdivision Control,* Approval not required, Frontage on public way, Access ways. *Way,* Public: subdivision control.

Where, since the owner of a certain parcel of land had a common law right of access to an adjacent public parkway, each lot in a proposed division of the parcel had the requisite frontage for serviceable access within the meaning of G. L. c. 41, § 81L, and where such access was not impaired or limited by a substantial landscaped green belt intervening between the parcel and the parkway, approval of the planning board under a town's subdivision control law was not required [573-574]; and further, a proposed common driveway was irrelevant to the determination whether division of the parcel constituted a subdivision [574-575].

CIVIL ACTION commenced in the Superior Court Department on October 31, 1985.

The case was heard by *Roger J. Donahue, J.*

*Ira H. Zaleznik* for the plaintiff.

*Robert D. O'Leary,* Town Counsel, for the defendant.

ARMSTRONG, J. The plaintiff (Fox) owns a parcel of land in Milton that abuts the land taken by the Metropolitan Park Commission in 1904 to construct the Neponset Valley Parkway. Proposing to divide the parcel into four lots, each with the frontage required by the Milton zoning by-law (150 feet) on the parkway land, Fox submitted a plan to the planning board for endorsement under G. L. c. 41, § 81P, that approval was not required. The plan shows that the four lots are separated from the paved portion of the parkway by approximately 175 feet, the average width at that point of a green belt that borders the parkway. Fox has obtained from the Metropolitan District

---

[1] Trustee of Lake Street Realty Trust.

Commission[2] an access permit for a T-shaped driveway on the green belt that connects, at the base, to the paved road and, at the top, to the four lots where they abut the green belt. The proposed T-shaped drive is also depicted on the plan. The planning board denied the § 81P endorsement, ruling, as did the trial judge, that the plan showed a subdivision. The case is before us on Fox's appeal.

The planning board relies, with some plausibility, on a line of cases that hold that the "frontage on . . . a public way" called for by G. L. c. 41, § 81L, as amended through St. 1979, c. 534, must be frontage that offers serviceable access from the buildable portion of the lot to the public way relied on. See *Gifford* v. *Planning Bd. of Nantucket,* 376 Mass. 801, 807 (1978) ("pork chop" lots, connected to public way by ribbons of land, with sharp angle turns, too narrow for vehicular access); *McCarthy* v. *Planning Bd. of Edgartown,* 381 Mass. 86 (1980) (frontage on limited-access highway); *Hrenchuk* v. *Planning Bd. of Walpole,* 8 Mass. App. Ct. 949 (1979) (same); *Perry* v. *Planning Bd. of Nantucket,* 15 Mass. App. Ct. 144 (1983) (frontage on unconstructed public way). Compare *Gallitano* v. *Board of Survey & Planning of Waltham,* 10 Mass. App. Ct. 269 (1980); *Hutchinson* v. *Planning Bd. of Hingham,* 23 Mass App. Ct. 416 (1987). In the board's view, Fox's parcel is effectively blocked from the paved way by the green belt, his proposal is essentially for the development of back land, and the access drive should be subject to the regulation of the board governing roads into subdivisions.

The board's view, however, does not take adequate account of the rights of access that abutting landowners have to parkways constructed, as was the Neponset Valley Parkway, by the Metropolitan Park Commission under the authority of St. 1894, c. 288. In contrast to roadways constructed within public parks (as to which see *Burke* v. *Metropolitan District Commn.,* 262 Mass. 70 [1928]), the roads and boulevards constructed

---

[2] The Metropolitan Park Commission, established by St. 1893, c. 407, was abolished by St. 1919, c. 350, § 123, and its responsibilities were transferred to the Metropolitan District Commission.

under the 1894 statute are public ways (*id.* at 72-73, and cases cited) to which abutting owners have a common-law right of access. *Anzalone* v. *Metropolitan District Commn.,* 257 Mass. 32, 36 (1926). That right is, by statute, made subject to reasonable regulation by the commission, but access cannot be denied. *Id.* at 35-38. *Metropolitan District Commn.* v. *Cataldo,* 257 Mass. 38, 41-42 (1926). "If land adjacent to a roadway constructed under St. 1894, c. 288, should be divided into lots in separate ownership, each owner would have a right of access from his lot to [the] roadway." *Dwyer* v. *Metropolitan District Commn.,* 269 Mass. 573, 578 (1930), quoting from the *Anzalone* case, 257 Mass. at 36-37.

That the right of access to the parkway is not impaired or limited by a substantial, intervening, landscaped belt is illustrated by *Gleason* v. *Metropolitan District Commn.,* 270 Mass 377 (1930), where the distance from Gleason's land to the edge of the roadway (Old Colony Boulevard) was approximately sixty feet. *Id.* at 379.[3] In this as in many urban settings, access from the road to the lot may require crossing sidewalks or tree belts and may be subject to reasonable curb cut approval. The difference here is one of distance only, not of kind.

The proposed common driveway is not relevant to determining whether Fox's plan shows a subdivision. If all the lots have the requisite frontage on a public way, and the availability of access implied by that frontage is not shown to be illusory in fact, it is of no concern to a planning board that the developer may propose a common driveway, rather than individual

[3]Although we have based this decision on the common-law right of access, we should note that the land taking for the Neponset Valley Parkway (on April 18, 1904) was followed several months later by a confirmatory deed from Fox's predecessor in title (a Dr. George G. Kennedy) to the Commonwealth, and the deed made note (as part of the consideration therefor) of a reserved right in himself, his heirs, and his assigns of "free access to whatever walk and roadway is now or may hereafter be constructed by said Commonwealth along or in front of [the] adjoining land [of Kennedy] and over the premises hereby conveyed, with the right to use the same for the purposes of a way, subject to such reasonable rules and regulations as may from time to time be made . . . by any . . . department having for the time being the control and management of said Parkway . . .." See the comparable deed in *Anzalone* v. *Metropolitan District Commn.,* 257 Mass. at 34.

driveways, perhaps for aesthetic reasons or reasons of cost.[4] The Subdivision Control Law is concerned with access to the lot, not to the house; there is nothing in it that prevents owners from choosing, if they are so inclined, to build their houses far from the road, with no provision for vehicular access, so long as their lots have the frontage that makes such access possible. See *Gallitano* v. *Board of Survey & Planning of Waltham,* 10 Mass. App. Ct. at 272-273. Here, each of the proposed lots has the frontage called for by the Milton by-law. Under the *Anzalone* case each has a guaranteed right of access to the road itself. These facts satisfy the requirements of § 81L.

The judgment is reversed, and a new judgment is to be entered directing the board to endorse the plan in the manner discribed by G. L. c. 41, § 81P.

*So ordered.*

---

[4]The record does not disclose whether the common driveway was suggested by Fox or by the Metropolitan District Commission. We assume that the latter might prefer one curb cut to four. The relevant point for present purposes is that each lot has its own individual right of access to the road.