LAWRENCE S. GATES & others[1] *vs.* PLANNING BOARD OF DIGHTON.

No. 98-P-428.

Bristol. October 15, 1999. - January 4, 2000.

Present: KASS, KAPLAN, & GELINAS, JJ.

*Subdivision Control,* Approval not required, Frontage on public way, Access ways, Decision of planning board. *Way,* Public: subdivision control.

Discussion of the subdivision control law, G. L. c. 41, §§ 81K-81GG, and decisions construing its provisions regarding frontage and efficient vehicular access, for purposes of obtaining an endorsement on a subdivision plan that planning board approval is not required. [395-399]

A municipal planning board correctly denied an endorsement, on a proposed subdivision plan, pursuant to G. L. c. 41, § 81P, that planning board approval was not required, where the proposed frontage did not afford practical, safe, and efficient access for zoning purposes to eight of the twelve proposed lots. [400-401]

CIVIL ACTION commenced in the Superior Court Department on July 26, 1995.

The case was heard by *John M. Xifaras,* J.

*Mark Bobrowski* for the defendant.

*Mark L. Levin* for the plaintiffs.

KASS, J. Since the opinion in *Gifford* v. *Planning Bd. of Nantucket,* 376 Mass. 801 (1978), planning boards and developers of real estate have continued to present cases that raise the question whether access to a public way is "illusory" for purposes of obtaining an "ANR" (approval not required) endorsement under G. L. c. 41, § 81P. This is such a case, as is the case reported immediately following in this volume.[2] In this case, the planning board of Dighton (planning board) denied an

---

[1]Jonathan Fain and Lyle S. Fain, all as trustees of D.I. Trust II.

[2]See *Hobbs Brook Farm Property Co. Ltd. Partnership* v. *Planning Bd. of Lincoln, post* 403 (2000).

ANR endorsement and a judge of the Superior Court, reviewing that action under G. L. c. 41, § 81BB, ordered endorsement of the plan submitted by the landowners. The planning board has appealed. We defer recital of the facts and first describe the statutory and decisional framework.

1. *Statutory and decisional framework.* Under § 81P of the subdivision control law (G. L. c. 41, §§ 81K-81GG inclusive), an owner of land may secure from a planning board an endorsement on a plan of land that "approval under the subdivision control law [is] not required." G. L. c. 41, § 81P, as amended by St. 1963, c. 363, § 1. A planning board is bound to make such an endorsement unless the plan presented shows a subdivision. *Ibid.* That mandate steers the reader of the subdivision control law back to § 81L, which defines the term "subdivision," in part by what it is not. Notably, for purposes of this case, if a plan divides a tract of land into two or more lots, each with frontage on a public way equal to that required by zoning law, it does not create a subdivision.[3]

On first examination, the duty required of a planning board under §§ 81L and 81P is ministerial in character. See *Hamilton* v. *Planning Bd. of Beverly*, 35 Mass. App. Ct. 386, 389 (1993). A plan submitted for an ANR endorsement either has the requisite frontage or it does not. In the former case, the planning board should make the ANR endorsement, thereby giving notice that the board is not concerned with the plan. *Smalley* v. *Planning Bd. of Harwich*, 10 Mass. App. Ct. 599, 603 (1980).[4] The endorsement does not purport to declare that any of the lots depicted are "buildable." Zoning, environmental, and waste disposal issues, for example, remain open to be ruled on by agencies, local or State, having jurisdiction. See *Hobbs Brook Farm Property Co. Ltd. Partnership* v. *Planning Bd. of Lincoln, post* 403, 405 (2000).

What *Gifford* v. *Planning Bd. of Nantucket*, 376 Mass. 801 (1978), illuminated, however, was that the role of a planning board in acting on an application for an ANR endorsement is

---

[3]We have engaged in some simplification for the sake of the narrative. For example, if the municipality in which the land is located does not prescribe a minimum lot frontage, § 81L supplies a minimum frontage of twenty feet. The statute also describes ways other than public ways which provide a path to exemption from subdivision control.

[4]The landowner disseminates the endorsed plan by recording or registering it.

not so mechanical as we made it seem in the preceding paragraph. Planning boards and courts must take into account the function of planning boards and the purpose of the § 81P exemption from subdivision control. "[A] principal object of the [subdivision control] law [was] to ensure efficient vehicular access to each lot in a subdivision . . . ." *Id.* at 807. Efficient vehicular access was the critical factor, and if the plan or on-the-ground facts showed that vehicular access from the public way was not a practical possibility, then the planning board was to deny ANR endorsement. In *Gifford,* by way of illustration, one of the proposed lots included a 1,185-foot long neck of land connecting the frontage on the public way to the place where a house might be built. This serpentine strip changed direction seven times and narrowed at one point to seven feet, "a width less than that of any fire vehicle in use on Nantucket . . . ." *Id.* at 805. This was not a way "adequate for access for vehicular traffic," the criterion established for exemption from subdivision control in *Rettig* v. *Planning Bd. of Rowley,* 332 Mass. 476, 481 (1955), a case which anticipated the decision in *Gifford.*

Hard on the heels of *Gifford,* came *Hrenchuk* v. *Planning Bd. of Walpole,* 8 Mass. App. Ct. 949 (1979), which held that frontage on Interstate Highway 95, a limited-access highway, did not entitle the landowner to an ANR endorsement because, as a practical matter, there was no access through that frontage at all. In a similar vein, *McCarthy* v. *Planning Bd. of Edgartown,* 381 Mass. 86, 87-88 (1980), held that lots with 100 feet of frontage on a public way (Herring Creek Road), which satisfied the frontage requirement of the Edgartown zoning by-law, did not entitle the owner to an ANR endorsement because a superseding regulation of the Martha's Vineyard Commission permitted vehicular access only at 1,000-foot intervals. The court wrote, "[W]e have read the definition of 'subdivision' to refer to 'frontage' in terms of the statutory purpose, expressed in § 81M, to provide '*adequate access* to all of the lots in a subdivision by ways that will be safe and convenient for travel.' " *Ibid.,* quoting from G. L. c. 41, § 81M (emphasis supplied).

The primacy of efficient vehicular access as the pivotal criterion for a board's making an ANR decision was emphasized again in *Perry* v. *Planning Bd. of Nantucket,* 15 Mass. App. Ct. 144, 151 (1983). That case held that lots fronting on a paper

street, i.e., a street that had not been built, did not provide access within the meaning of § 81P because the access was not real in the physical sense. Despite technical compliance with frontage requirements and a planning board's limited authority in acting under § 81P, a board can properly deny a § 81P endorsement where access is nonexistent for the purposes set out in G. L. c. 41, § 81M. *Id.* at 153.

More recently, in *Poulos* v. *Planning Bd. of Braintree*, 413 Mass. 359 (1992), the owner presented a plan that showed twelve lots with the required frontage along an existing paved public way. Parallel to that way was a guardrail installed by the Department of Public Works (DPW)[5] to keep vehicles from pitching down a steep slope. Practical access was barred until the DPW took down the guardrail which it would not do unless the owner filled in the grade that produced the dangerous slope. Although removal of the guardrail and regrading might occur, in the sense that neither was an impossible task, the court thought that "in the absence of *present* adequate access from the public way to each of the plaintiff's lots," the planning board had rightly refused endorsement under § 81P. *Id.* at 362.

During the same period of years, there developed a line of cases that sounded a note of caution: *Gifford* did not confer upon planning boards a roving commission to assess the quality of access, so long as the access was not an illusion (as in *Gifford*). Nor were planning boards, in connection with requests for a § 81P endorsement, to consider the off-site traffic consequences of the access proposed. So, for example, in *Gallitano* v. *Board of Survey & Planning of Waltham*, 10 Mass. App. Ct. 269, 272-273 (1980), we said that the Waltham board could not withhold an ANR endorsement because it was of "opinion that vehicular access could be better provided for." *Id.* at 273. In *Gallitano* the angle at which one of the driveways fed into the public way produced an awkward left turn that the board thought would be a traffic hazard. That was a judgment beyond the narrow scope permitted to a board under § 81P.

In a similar vein, we held in *Smalley* v. *Planning Bd. of Harwich*, 10 Mass. App. Ct. at 604-605, that whether a lot shown on a § 81P plan conformed with zoning requirements was not an appropriate consideration in granting or withholding an ANR endorsement. *Hutchinson* v. *Planning Bd. of Hingham*, 23 Mass.

---

[5]The DPW is now known as the Department of Highways, G. L. c. 81, § 1, as inserted by St. 1991, c. 552, § 43.

App. Ct. 416, 420-421 (1987), illustrates impermissible considerations of the quality of access, rather than whether there was any practical access at all. The public way in the *Hutchinson* case was paved, twenty to twenty-one feet wide, about the same width as other streets in the area and sufficient to accommodate fire-fighting equipment and other emergency vehicles. In those circumstances, it was not a proper ground for denying an ANR endorsement that the Hingham planning board thought the road which would serve the proposed five-lot development should be wider, more suitably graded, and of better construction. *Id.* at 417, 420-421. Another case in which the planning board thought the public way, rather than the access to it, was inadequate was *Sturdy* v. *Planning Bd. of Hingham*, 32 Mass. App. Ct. 72, 76 (1992). We held that was not a legally sufficient reason to withhold ANR endorsement. In *Fox* v. *Planning Bd. of Milton*, 24 Mass. App. Ct. 572 (1987), four lots abutted, with adequate frontage, on Neponset Valley Parkway, to which abutters had a common law right of access, although they would have to traverse a green belt bordering the parkway. While access was subject to reasonable regulation, it could not be denied. *Id.* at 574. Access to the four lots was practical, and the planning board was bound to make an ANR endorsement.

Two cases decided in 1989 are further examples of limits on what a planning board may consider when reviewing an ANR request. The first of those, *Corcoran* v. *Planning Bd. of Sudbury*, 406 Mass. 248 (1989), bears resemblance to the case before us. The landowner in *Corcoran* asked for an ANR endorsement to a plan that showed six lots, each with frontage and access to the public way. On three lots, wetlands stood between the public way and the back land of those lots on which a house might be built. There had been no request to build a driveway on the wetland made to either the local conservation commission or the State Department of Environmental Quality Engineering. The opinion is silent as to whether such a request would likely have been granted or denied. "The presence of wetlands on the lots does not raise a question of access from the public way, but rather the extent to which interior wetlands can be used in connection with structures to be built on the lots." *Id.* at 251. In the absence of "distinct physical impediments to threshold access," the access shown on the plan was not illusory. *Ibid. Long Pond Estates, Ltd.* v. *Planning Bd. of Sturbridge*, 406 Mass. 253, 254-255 (1989), was the second

of that pair of 1989 decisions. There, the planning board withheld ANR endorsement because Champeaux Road, the public way on which three lots of adequate width fronted, was subject to periodic flooding. This was a difficulty on an average of thirty-three and one-half days a year, but when Champeaux Road was flooded, there was alternate access to the three lots in question from ways in a neighboring town. In those circumstances, the court held, the landowner was entitled to a § 81P endorsement.

Two categories of access on public ways come into focus out of this decisional history. There is the "could be better but manageable" category and the "illusory" category. The first category warrants a § 81P endorsement; the second does not. We proceed to consider in which categorical basket, on the facts, the case before us belongs.

2. *Facts.* We draw our facts from the record appendix, and from the careful statement of them made by the trial judge, which was informed by an acute understanding of the question presented. The landowners' locus in Dighton is a 111.87 acre tract. On the ANR plan submitted to the planning board on May 17, 1995, the owners proposed a division of the locus into twelve lots: lot 1, with conforming frontage (not less than 175 feet) on Milliken Avenue,[6] a public way, and lots 2 through 12, with conforming frontage on Tremont Street, also a public way. Tremont Street is the southern boundary of the locus.

As to lots 2-9 on Tremont Street, however, the front land is wetland and unsuitable for residential construction.[7] The upland, which can be built upon, is a considerable distance from Tremont Street. The result of these soil conditions is that the lots assume the peculiar shapes (variously those of a boomerang, an "L," an arch and a labyrinth) shown on the appended plan. To reach the portions of the lots where a house could be built, if

---

[6]That lot 1 fronts on Milliken Avenue is an assertion that appears in a stipulation of the parties, the judge's findings, and the statement of facts in each party's brief. Examination of the proffered plan suggests the claim of frontage by lot 1 on Milliken Avenue is literally a stretch. The frontage claim rests on access to Milliken Avenue over a neck of land 40 feet wide and 1,100 feet long. That neck flares to 183.4 feet at Milliken Avenue. To get there, however, requires passage over a private right of way, along which land belonging to persons other than the plaintiffs abuts. Lot 1's claim to frontage on a public way is less than bullet proof.

[7]Similar wetland difficulty pertains to lots 10-12. The plaintiff-landowners propose to enter and leave those lots by way of School Street. See the plan annexed to this opinion.

entering from Tremont Street, it would be necessary to build driveways on bridges over the wetland. In the case of six of those lots the bridges would be about 2,000 feet long.

So formidable are the difficulties of an approach from Tremont Street, that the plan devised for the owners by their civil engineer avoids access from Tremont Street altogether. Rather, access for lots 2 through 9 was to be achieved by construction of an extension to an existing private way, Chase Street extension, that runs north-south, perpendicular to Tremont Street (which runs east-west), and by construction of a 24-foot wide driveway along the northern boundary of lot 4, extending into lot 3, and with a cul-de-sac for a vehicular turn around in lot 3.[8] As planned, the Chase Street extension access roadway does not conform to width, subbase, drainage, or sidewalk requirements of the rules and regulations of the planning board.

The developer's professional engineer conceded at trial that approaching the lots from Tremont Street would be an "environmental disaster" as well as an economic calamity, and that his plans called for alternate access from other points. At those points the frontage afforded is generally a great deal less than the 175 feet required under the Dighton zoning by-law. Leaving aside practicality and the necessity of other public approvals (notably from the Dighton conservation commission), the engineer said access from Tremont Street was theoretically possible.

3. *Whether access by Tremont Street is illusory?* Unlike the circumstances of *Corcoran* v. *Planning Bd. of Sudbury*, 406 Mass. at 251, in which the interior wetlands did not present a physical barrier that rendered access to the three lots in question illusory, in the instant case, the length and errant routes (lot 11, for example, has four changes of direction) that need to be traversed by an elevated structure produce the illusive quality. Hence the odd shaping of lots (as in the *Gifford* case), the rejection by the developer of Tremont Street as practical access to all the planned lots, and the proposed construction for eight of the lots of a roadway to the rear of them — if Tremont Street is the front. There is, on the ground, recognition that as to Tremont Street there is the "absence of existing ways of access." *Poulos* v. *Planning Bd. of Braintree*, 413 Mass. at 362.

It is helpful to return to first principles concerning the object

---

[8]Despite its alleged frontage on Milliken Avenue, access to Lot 1, too, would be obtained through Chase Street Extension.

of the subdivision control law and the task of planning boards: to ensure, by regulating their design and construction, safe and efficient roadways to lots that do not otherwise have safe and efficient access to an existing public roadway. *Daley Constr. Co.* v. *Planning Bd. of Randolph,* 340 Mass. 149, 153 (1959). *Gifford* v. *Planning Bd. of Nantucket,* 376 Mass. at 807. The proposed Chase Street extension and the east-west spur give the game away. They constitute the road system that gives vehicular access to lots 1 through 9. The adequacy of such a road system, as prescribed by the rules and regulations of the planning board, is precisely what the subdivision control law is about. As in the *Gifford* case, the plan proffered is "an attempted evasion of the duty to comply with the regulations of the planning board." *Id.* at 808. We think the character of the Chase Street extension and the east-west spur is distinct from that of the common driveway commented upon tolerantly in *Fox* v. *Planning Bd. of Milton,* 24 Mass. App. Ct. at 574-575, a case in which access from the public way was, in any event, attainable.

For the reason that the frontage along Tremont Street does not afford practical, safe, and efficient access from Tremont Street and that the proffered ANR plan shows a subdivision, the planning board rightly declined to endorse the proffered plan under G. L. c. 41, § 81P.

The judgment of the Superior Court is reversed, and a judgment shall be entered that the planning board acted within its authority.

*So ordered.*