Muse, Christopher J., A.J.
The plaintiff, Robert Branagan, is the owner of a property located at 50 Nye Road in Falmouth. When Branagan purchased the property on January 15, 2004, it consisted of one lot with three separate dwellings and a garage, and comprised approximately 20,128 square feet of area and eighty-eight feet of frontage. On June 1, 2004, Branagan filed an application with the Falmouth Planning Board seeking to divide the parcel into three lots in a manner consistent with G.L.c. 41, §§81L and P. The Planning Board endorsed the application, leaving Branagan with three lots (Lots 1, 2 and 3).[2]
On January 23, 2004, Branagan filed a special permit application under section 240-3 of the Falmouth by-laws with the Falmouth Zoning Board of Appeals seeking approval for: (1) the section 81L subdivision; and (2) a proposed addition to the dwelling house located on Lot 2. On July 19, 2004, the Board of Appeals issued an order approving the subdivision and denying the request for the addition. Pursuant to G.L.c. 40A, §17, the plaintiff appealed the Board of Appeal’s decision.
On July 12, 2006, this court held a trial to review the Board of Appeal’s decision. At trial, the parties stipulated to the following facts, which this court finds are undisputed and supported by the record:
1. The properties before the Court consist of three dwellings. The addresses for the dwellings are numbers 50, 52, and 54 Nye Road, Falmouth, MA.
2. On January 15, 2004, Branagan acquired the three dwellings by deed recorded in Book 18130, page 128.
3. At the time of the conveyance to Branagan, the three dwellings were situated on a single parcel of land.
4. A plan of land was prepared for Branagan and recorded in Book 588, page 24. The plan depicts the three dwellings as being situated on a single parcel of land. The land area depicted on the plan is 20,128 square feet more or less.
5. The property, in its entirety, is located in the General Residence zoning district.
6. According to 1957 Assessors records from the Town of Falmouth, the three dwellings were in existence prior to 1957.
7. The Falmouth Building Department does not possess any records indicating when the three structures were built.
8. The three structures have co-existed on the lot for a period well in excess of 10 years.
9. Under current zoning in the General Residence zone in Falmouth, only one dwelling per lot is allowed.
10. On May 19, 1959, the Attorney General approved an amendment to the Falmouth Zoning by-law (Article 14) which explicitly stated that not more than one building for dwelling purposes shall be erected on a single lot.
11. At the time of the Zoning amendment, the lot in question contained the three dwellings.
12. After the enactment of the zoning amendment in May of 1959, the dwellings became pre-existing nonconforming dwellings by virtue of having more than one dwelling on the lot.
13. At the time when Branagan purchased the property, the three dwellings situated thereon were legally protected pre-existing nonconforming structures. Additionally, the structures were protected by G.L.c. 40A, §7, due to their having been in existence in excess of ten years.
14. On or about June 1, 2004, Robert Branagan petitioned the Falmouth Planning Board seeking permission to divide the lot into three separate lots, *384 each having a dwelling on it. The petition was filed pursuant to G.L.c. 41, §81L.
15. The Falmouth Planning Board approved the petition on July 20, 2004.
16. The approved plan was recorded in Plan Book 592, page 78.
17. The approved division contains Lot 1 having an area of4,986 feet more or less, Lot 2 having an area of 7,964 square feet more or less, and Lot 3 having an area of 7,177 square feet more or less. Each lot has a dwelling on it.
18. The approved G.L.c. 41, §81L, plan contains a note stating “The Planning Board’s endorsement under the subdivision control law is not a determination that the lots comply with zoning regulations and should not be construed as an approval that the lots depicted on the plan are entitled to a building permit.”
19. The approved G.L.c. 41, §81L, plan contains a second note stating “Endorsement under section 81L of Chapter 41 — The structures on this plan predate the adoption of the subdivision control law in the Town of Falmouth.”
20. On or about January 23, 2004, Branagan filed a petition for a special permit from the Falmouth Zoning Board of Appeals. Branagan sought zoning relief for two reasons:
A) He sought relief from the Zoning Board of Appeals to sanction the creation of the three lots pursuant to G.L.c. 41, §81L.
B) He sought relief from the Zoning Board of Appeals to construct two additions to the dwelling located on Lot 2. The proposed two additions altered the footprint of the existing structure increasing it in size.
21. In a decision filed on July 19, 2004, the Falmouth Zoning Board granted a special permit to allow the subdivision of the pre-existing nonconforming lot into three lots. It is agreed that this decision does not have any legal effect since under G.L.c. 41, §81L, only the planning board can approve the division.
22. In the same decision, the Falmouth Zoning Board of Appeals voted to deny the request for a special permit to allow an addition to the dwelling located on Lot 2.
23. Notwithstanding the Grant of a Special permit, the Town and Branagan both agree that it is not necessary to obtain a special permit from the Zoning Board of Appeals to sanction the creation of the three lots. The division of land pursuant to G.L.c. 41, §81L, rests exclusively with the Planning Board.
24. With respect to the requested additions to the structure located on Lot 2, the Zoning Board of Appeals denied the request, holding that the “existing structures may be modified only within their existing footprint.”
25. The two proposed additions are shown on a compiled site plan prepared by Falmouth Engineering.
26. The addition on the east side of the structure is approximately 10 ft by 13.3 ft. It is one stoiy.
27. The addition on the west side of the structure is approximately 14.06 ft by 22.07 ft. It is two stories.
28. The existing house has two bedrooms.
29. The proposed structure has two bedrooms.
30. Neither of the proposed two additions to the structure on Lot 2 violate any setbacks under the Falmouth Zoning by-law.
31. The proposed lot coverage by structure for Lot 2 is 18.3%. Allowed lot coverage is 20%.
During the course of the hearing, the parties submitted nineteen exhibits. [See Appendix.)
After considering the stipulations of fact, the exhibits now in evidence, and the arguments of the parties, this court finds the following additional undisputed facts relevant to the disposition of this matter.
In evaluating the merits of Branagan’s special permit application, the Board of Appeals also made the following findings: (1) there is adequate parking at the site; (2) there will be no impact on traffic or safely; (3) there will be no adverse impact on visual character of the neighborhood, including views and vistas; (4) there are adequate utilities, including the septic system on the site; and, (5) there would be no effect on the supply of affordable housing.

DISCUSSION

I. The Status of Lot 2

Under Falmouth by-law section 240-3, a party seeking to add on to a structure on a preexisting nonconforming structure or use may file a special permit application with the Zoning Board of Appeals. Sections 240-3 and 240-216 then set out a series of criteria which must be satisfied prior to approval. The parties agree that prior to the section 8IP endorsement, the lot contained three pre-existing nonconforming structures. The parties further agree that had Branagan applied for a special permit prior to the section 8IP endorsement, it is likely that the addition would have been permissible. The issue in the present case thus arises from the Board of Appeals’ denial of Branagan’s special permit application seeking permission to place an addition on a pre-existing nonconforming dwelling on what is now Lot 2.
The plaintiff argues that the Board of Appeals committed an error of law in denying his special permit application because structures on lots created by a section 81P endorsement retain their status as pre-existing nonconforming structures. He further asserts that his special permit application satisfied the criteria set out in by-law sections 240-3 and 240-216, and therefore, that the Board of Appeal’s denial of the *385 special permit was arbitrary and capricious. In support of the denial, the Board of Appeals counters that when Branagan divided his property under section 8IP, he created new zoning violations on the lots ensuing from the section 8IP division, and the structures located on those lots lost their status as pre-existing nonconforming structures. The Board of Appeals therefore asserts that expansion of the structure on Lot 2 is not permissible.
The defendants, however, misconstrue the import of G.L.c. 41, §81P. Pursuant to G.L.c. 41, §81P, a person seeking to record a plan of land situated in a town where a subdivision control law is in effect, and who believes that the plan does not require approval under the subdivision control law, may submit his plan to the planning board for review. If the planning board then finds that the plan does not require approval, it must endorse the plan with the words “approval under the subdivision control law not required,” thereby allowing the division of property to proceed. Id. Here, because each building on the original lot was standing at the time the subdivision control law went into effect, the Planning Board endorsed the plan. See G.L.c. 41, §81L (“[T]he division of a tract of land on which two or more buildings were standing when the subdivision control law went into effect in the city or town in which the land lies into separate lots on each of which one of such buildings remains standing, shall not constitute a subdivision”); Citgo Petroleum v. Planning Bd. of Braintree, 24 Mass.App.Ct. 425, 426 (1987).
When a lot is created under sections 81L and 81P, it remains subject to local zoning laws. Gates v. Planning Bd. of Dighton, 48 Mass.App.Ct. 394, 395 (2000), citing Hobbs Brook Farm Property Co. Ltd Partnership v. Planning Bd. of Lincoln, 48 Mass.App.Ct. 403, 406-07 (2000) (“Zoning, environmental, and waste disposal issues, for example, remain open to be ruled on by agencies, local or State, having jurisdiction”); Citgo Petroleum, 24 Mass.App.Ct. at 426 (“[J]ust because a lot can be divided under this exception does not mean that the resulting lots will be buildable under the zoning ordinance”); Artigo v. Planning Bd. of Franklin, 12 Mass.App.Ct. 802, 807-08 (1981) (planningboard’s waiver of the section 81L frontage requirements does not obviate the need for a variance from the board of appeals); Smalley v. Planning Bd. of Harwich, 10 Mass.App.Ct. 599, 604 (1980) (section 81P endorsement does not preclude zoning by-law enforcement). Moreover, the Land Court, which is the only Massachusetts court to address this issue, has held that a single-family residential structure on a lot so created is entitled to special protections and that section 81L must be read in a manner consistent with G.L.c. 40A, §6, which requires the zoning board to make a determination as to whether the proposed changes to the nonconforming residential structure will increase its nonconforming nature. See Norwell Arch, LLC v. Opdylce, 12 Land Ct. Rptr. 208, *2 (2004); see also G.L.c. 40A, §6 (zoning ordinance applies to pre-existing residential structure “except where alteration, reconstruction, extension or structural change to a single or two-family residential structure does not increase the nonconforming nature of said structure”). In reaching this holding, .the Land Court expressly rejected the argument made by the defendants in this case, i.e. that Lot 2 is an unlawful structure with no zoning protection. This court therefore adopts the Land Court’s reasoning in Norwell Arch, and rules that the Board of Appeals committed an error of law by not treating Branagan’s structure on Lot 2 as a pre-existing nonconforming structure.[3]

II. Application for the Special Permit

To expand the pre-existing nonconforming structure on Lot 2, Branagan correctly brought an application under section 240-3. In evaluating the merits of this application under sections 240-3 and 240-216, the Board of Appeals found that: (1) there is adequate parking at the site; (2) there will be no impact on traffic or safeiy; (3) there will be no adverse impact on visual character of the neighborhood, including views and vistas; (4) there are adequate utilities, including the septic system on the site; and, (5) there would be no effect on the supply of affordable housing.[4] The Board of Appeals further concluded that expansion of the nonconforming lot beyond its existing footprint would be more detrimental to the neighborhood. This court must now review whether the Board of Appeals’ findings support the denial of the special permit.
A trial court reviewing a zoning board decision denying a special permit can only reverse the board’s decision if it is based on a legally untenable ground or is unreasonable, whimsical, arbitrary or capricious. ACW Realty Mgmt., Inc. v. Planning Bd. of Westfield, 40 Mass.App.Ct. 242, 249 (1996); Gamache v. Town of Acushnet, 14 Mass.App.Ct 215, 220-21 (1982). A decision is not arbitrary and capricious unless there is no ground upon which reasonable persons might deem proper to support it. FIC Homes of Blackstone, Inc. v. Cons. Comm’n of Blackstone, 41 Mass.App.Ct. 681, 684-85 (1996). As such, there must be a rational relationship between the board’s decision and the regulations it relies upon. Fafard v. Conservation Comm’n of Reading, 41 Mass.App.Ct. 565, 572 (1996). Moreover, the decision must be based on substantial evidence in the record, i.e. evidence that a reasonable mind would accept as sufficient to support the finding. New Boston Garden Corp. v. Bd. of Assessors of Boston, 383 Mass. 456, 466 (1981).
In this instance, the Board of Appeals did not make any findings of impact under sections 240-3[5] or 240-216.[6] Therefore, there is no rational relationship between the findings and the regulations. Moreover, the Board merely concluded, without any supporting evidence, that because Branagan proposed to enlarge the structure, it would have a detrimental impact to the *386 neighborhood.[7] Defendants’ counsel essentially conceded this point. As such, the conclusoiy decision by the Board of Appeals was arbitrary and capricious and not supported by substantial evidence. Based on the aforementioned findings of the Board of Appeals, this court finds that the Board of Appeals should have granted Branagan’s special permit application.

ORDER

For the reasons stated herein, this court FINDS that Branagan’s dwelling on Lot 2 is a pre-existing nonconforming structure. The Falmouth Zoning Board of Appeals decision denying Branagan’s special permit application is REVERSED. The matter is REMANDED to the Falmouth Zoning Board of Appeals to enter an order consistent with this decision on Branagan’s special permit application.
APPENDIX
List of Exhibits
1. Joint Pre-trial Memorandum
2. List of Stipulations
3. Deed — Perry to Branagan
4. Falmouth Assessors Reference — (3)—Nye Road in Falmouth
5. Form A — Application for Endorsement— Branagan — Planning Board
6. Falmouth Board of Health — Variance
7. Petition for Special Permit
8. Publication for Special Permit
9. Floor Plans — Branagan
10. Elevation Plans — Branagan
11. 1959/1960 Vote — Town of Falmouth — By-law
12. Decision — Falmouth Zoning Board of Appeals
13. Deed — Branagan to Denekamp — Lot 1
14. Deed — Branagan to Rood — Lot 3
15. Photographs of Subject Property
16. Perimeter Plan — Book 588 page 24
17. G.L.c. 41, §81L, Plan—Lots 1, 2, and 3. Book 592 page 78
18. Compiled Site Plan of subject premises prepared by Falmouth Engineering
19. Falmouth Zoning By-Laws

Branagan subsequently sold Lots 1 and 3 and retained Lot 2.

The primary case cited by the defendants is inapposite. Norton v. Donahue stands for the proposition that a “property owner may not create a valid building lot by dividing it from another parcel rendered nonconforming by such division.” 2004 WL 1045455 (Mass. Land Ct., May 10, 2004) (Trombly, J.). The plaintiffs in Norton began with one lot with a bam and a house. They then divided the properly under section 81L, resulting in two lots, one with a house and one with the bam. The division left the house on a small nonconforming lot and the bam on a large lot suitable for a house. They then sought to replace the barn with a house. In this case, however, the plaintiffs do not seek to create a building lot. They merely seek to expand a pre-existing nonconforming structure.

Analysis of these factors are required under section 240-216(d), (e), (f), and (g).

Section 240-3 requires consideration of the section 240-216 standard: whether the structure: (a) creates new dimensional nonconformities, (b) impairs views or vistas, or (c) fails to conform to average neighborhood dimensions; and whether the proposal is substantially more detrimental to the neighborhood. As discussed above, the Board of Appeals did not make negative impact findings under section 240-3.

Section 240-216 requires consideration of: (a) adequacy of the site in terms of size for the purposed use; (b) suitability of the site for the proposed use; (c) impact on traffic flow and safety; (d) impact on neighborhood visual character, including views and vistas; (e) adequacy of method of sewage disposal, source of water and drainage; (f) adequacy of utilities; (g) effect on the affordable housing supply;... and (i) compliance with applicable zoning by-laws. As discussed above, the Board of Appeals, after considering these factors, made no negative impact findings.

From this court’s review of the record, it appears that the Board of Appeals’ only basis for denying the permit was its erroneous interpretation of the status of Lot 2 following division under G.L.c. 41, §§81L and P. All other determinations supported granting the special permit.