JOHN B. McELDERRY, JR., & another[1] *vs*. PLANNING BOARD OF NANTUCKET.

Nantucket. April 6, 2000. - June 15, 2000.

Present: MARSHALL, C.J., ABRAMS, GREANEY, IRELAND, SPINA, & COWIN, JJ.

*Subdivision Control,* Plan, Approval of plan, Planning board, Voting requirements. *Statute,* Construction.

The affirmative vote of a majority of a municipal planning board, and not merely a majority of a quorum, was required under G. L. c. 41, § 81L, to approve a definitive subdivision plan. [724-727]

CIVIL ACTIONS commenced in the Superior Court Department on February 27, 1998.

After consolidation, the cases were heard by *Robert W. Banks,* J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Paul Killeen* for the plaintiffs.

*Kimberly M. Saillant* for the defendant.

GREANEY, J. The principal issue in this case, which we transferred to this court on our own motion, concerns whether approval of a definitive subdivision plan by a municipal planning board requires an affirmative vote by a majority of a quorum of the members of the board, or such a vote by a majority of the members of the board. We conclude that the latter is required, and as a consequence, in the absence of the requisite vote, the plaintiffs' definitive subdivision plan was disapproved. The case, however, must be remanded to the Superior Court to decide the plaintiffs' alternative claim that, if the plan has been disapproved, then the disapproval should be annulled on the merits because the disapproval was otherwise improper, and to decide the issues in a companion case, if they remain relevant.

The facts are uncontested. On November 7, 1997, the

[1]Mary E. McElderry.

plaintiffs submitted to the planning board of Nantucket (board) for approval a definitive subdivision plan, entitled "Rosen Acres Definitive Subdivision Plan in Nantucket, Massachusetts" (plan). Approval of the plan required several waivers of the board's rules and regulations, one of which would allow the plaintiffs to construct a roadway with a 120-foot center-line radius as distinguished from a roadway with a minimum center-line radius of 200 feet. The board held a hearing to discuss the plan on December 22, 1997, and continued the hearing to February 5, 1998, and February 9, 1998.[2] The board consists of five regular members, but only three of the five members were present at the February 9 hearing. At that meeting, the three members deliberated the plaintiffs' application and voted, two-to-one, to grant the roadway waiver. The board then voted, again by a margin of two-to-one, to approve the plan, with specific modifications recommended by the board's engineering consultant. The chairman of the board was the one member who voted against the plan's approval.

After members voiced disagreement concerning the effect of their vote, the chairman declared that the vote constituted a disapproval of the plan, due to the lack of approval by a majority of the board's five members. On February 13, 1998, the chairman filed a certification of the board's disapproval with the town clerk, stating that (1) a majority of the entire board was required under G. L. c. 41, § 81L, to approve any definitive subdivision plan; (2) the waiver of the minimum center-line radius requirement would have created "unsafe parallel roadways," in violation of the general purpose provisions of the board's rules and regulations; and (3) the plan violated a provision of the rules and regulations that required streets in a proposed subdivision to be "continuous" and "in alignment" with existing streets as far as practicable.

The plaintiffs brought this action in the Superior Court, pursuant to G. L. c. 41, § 81BB, claiming that the board's vote constituted approval of their plan and, if that were not so, that the board had otherwise acted improperly in disapproving the

---

[2] A voluntary extension of the deadline, from February 5, 1998, until February 13, 1998, had been granted, by which date the board had to approve, modify, or disapprove the plaintiffs' plan, or, under G. L. c. 41, § 81U, the board's failure to act could be deemed constructive approval of the plan.

plan.[3] At the same time, seven owners of land near the plaintiffs' property filed suit in the Superior Court against the plaintiffs and the board, claiming that a determination that the plan had been approved would result in several violations of the board's rules and regulations, and would violate their safe use and enjoyment of rights possessed by them. The two actions were consolidated.

The judge considered the single issue of the effect of the board's February 9 vote. Recognizing that the determination of the number of votes required for approval of a definitive subdivision plan presented a matter of first impression, the judge concluded, based on other trial court decisions and the language of G. L. c. 41, § 81L,[4] that the board had disapproved the plan because its approval required the votes of a majority of the members of the board. Based on this conclusion, the judge did not reach the other issues raised by the plaintiffs' action or the issues raised in the action brought by the nearby landowners.

The plaintiffs appealed from the judgment embodying the judge's conclusion, claiming that (1) the board's two-to-one vote on the motion to approve their plan constituted approval of the plan; and (2) the judge erred in failing to afford the plaintiffs the de novo review to which they were entitled to decide whether, as they assert, the board's disapproval was improper on its merits.[5]

1. No appellate case has decided whether approval of a defini-

---

[3]The plaintiffs also asserted in their complaint that, if the vote was insufficient for approval, the vote did not constitute final action by the planning board, and, as a result, the plan had been constructively approved. This claim is not argued on appeal, and we consider it waived.

[4]Section 81L reads in pertinent part: " 'Certified by (or endorsed by) a planning board,' as applied to a plan or other instrument required or authorized by the subdivision control law to be recorded, shall mean, bearing a certification or endorsement signed by a majority of the members of a planning board, or by its chairman or clerk or any other person authorized by it to certify or endorse its approval or other action and named in a written statement to the register of deeds and recorder of the land court, signed by a majority of the board."

[5]After the entry of judgment, and while this appeal was pending, the plaintiffs resubmitted the plan to the board. This time, four members of the board were present, and the board voted to disapprove the plan, by a three-to-one margin. The board then filed a motion to dismiss the plaintiffs' appeal, claiming that its reconsideration and subsequent disapproval of the plaintiffs' plan made the appeal moot. This motion has been denied because the resub-

tive subdivision plan requires the affirmative vote of a majority of a planning board's members, or whether a simple majority of a quorum of members is sufficient.[6] The plaintiffs assert that the provisions of the subdivision control law contain no directive on this point, and as a result, the question is governed by the general rule stated in *Clark* v. *City Council of Waltham*, 328 Mass. 40, 41 (1951). In that case, ten members of an eleven-member city council voted four in favor, one opposed, and five abstaining, to confirm a mayoral appointment. Because four of eleven possible votes was not a majority, the council's president concluded that the appointment had not been confirmed, and recorded the vote accordingly. This court upheld the ruling by a Superior Court judge, on a writ of certiorari, which confirmed the questioned appointment and quashed the record to the contrary. In so doing, the court made the following statement: "The unbroken current of authority in this Commonwealth leads to the conclusion that [the judge] was right. 'In the absence of statutory restriction the general rule is that the majority of a council or board is a quorum and a majority of the quorum can act.' " *Id.*, quoting *Merrill* v. *Lowell*, 236 Mass. 463, 467 (1920).

We are satisfied that there is a "statutory restriction" in the subdivision control law. The statute sets forth a detailed procedure whereby a landowner may obtain approval to subdivide a tract of land into building lots, in order to record the approved plan, and thereby give marketability to the new lots. See *Arrigo* v. *Planning Bd. of Franklin*, 12 Mass. App. Ct. 802, 808 (1981). Section 81U authorizes a planning board to approve, modify, or disapprove a definitive subdivision plan. Section 81V details the procedure whereby, once a planning board has approved a definitive subdivision plan (or after appellate rights are determined), the board indorses the approved plan, and delivers it to the party or parties who submitted the plan.[7] Section 81X states that no register of deeds may record

---

mission of the plan and the second vote were intended as an effort to settle the case, and, by engaging in the procedure, the plaintiffs did not intend to waive their claims or make their action moot.

[6] The parties cite to various appellate decisions that they argue are instructive on the point. We have examined the authority presented. All of the decisions are distinguishable and of no assistance in resolving the issue. We shall not belabor this opinion by discussing the decisions.

[7] If a plan has been constructively approved, § 81V authorizes the clerk of

any plan showing a subdivision, unless the plan bears a board's indorsement certifying that the plan has been approved, or the board's indorsement that the plan does not require approval, or, in the case of constructive approval, an appropriate certificate of the clerk of the municipality.

The intrinsic theme connecting these provisions is that an indorsement of approval requires, as § 81L expressly states, the signatures of a "majority of the members of a planning board" or such representative of the board as "its chairman or clerk or any other person" so authorized by a majority of the board. We do not consider the fact that §§ 81L, 81V, and 81X speak of indorsements, while § 81U addresses approval of the plan itself, to be of any material significance. In view of the fact that a board must indorse a plan that has been approved, it would be illogical to hold that less than a majority of the members of a board may approve a plan, while indorsement of the plan requires the signatures of a majority of members. See G. L. c. 41, § 81V ("the planning board shall cause to be made upon the plan a written endorsement of its approval").

We view other considerations as supporting this statutory analysis. The Zoning Act and the subdivision control law share a similar purpose: to regulate the use of land to ensure the safety, convenience, and welfare of the inhabitants of municipalities. See *Sturges* v. *Chilmark*, 380 Mass. 246, 253 (1980) (zoning act); *Costanza & Bertolino, Inc.* v. *Planning Bd. of N. Reading*, 360 Mass. 677, 679 (1971) (subdivision control law). A permit granting authority's action on applications for zoning relief, and a planning board's action on a definitive subdivision control plan, require hearings to determine the rights of applicants with respect to the use of land, and both proceedings are judicial, or quasi judicial in nature. See *Mullin* v. *Planning Bd. of Brewster*, 17 Mass. App. Ct. 139, 142-143 (1983). Cf. *Milligan* v. *Board of Registration in Pharmacy*, 348 Mass. 491, 494 (1965). It is true, of course, that the Zoning Act, with respect to voting requirements, is quite explicit. See G. L. c. 40A, § 9 (special permits require two-thirds vote of board with more than five members, four votes of five-member board, and unanimous vote of three-member board) and § 15 (variances require same vote). Similar clarity is admittedly not present in the subdivision control law. We think, however, that

the municipality to issue a certificate, indicating that the plan has been approved by reason of the board's failure to act.

some measure of consistency is desirable between the provisions of the two statutes on the voting requirements necessary to decide applications for variances or special permits, and applications for approval of definitive subdivision plans. An anomalous situation would exist when, on a given evening, in one room of a municipal building, the permit granting authority is considering the grant of zoning relief (particularly, an application for a special permit) under the stringent voting requirements imposed by G. L. c. 40A, and, in another room, a planning board is considering approval of a definitive subdivision plan under a voting requirement that allows approval by a majority of a quorum of its members. In view of the general similarities between the two functions, and the language used in G. L. c. 41, § 81L, we perceive no sound reason why a planning board should conduct its business under such relaxed standards.[8] We conclude that action by a planning board to approve a definitive subdivision plan requires the affirmative vote of a majority of the members of the board.[9] The judge correctly decided that the two-to-one vote by the board on the motion to approve the plaintiffs' plan constituted disapproval.

2. We reject the board's argument that the judge considered and decided the merits of the disapproval, as required under G. L. c. 41, § 81BB. The judge's decision reflects only his rulings of law on the effect of the board's vote, and he did not undertake review of the board's disapproval on its merits. The case has to be remanded to the Superior Court for consideration of the plaintiffs' contentions that the board's decision was unlawful.

3. The judgment stating that the plaintiffs' plan had been disapproved for lack of a vote by a majority of the members of the board is affirmed. The case is remanded to the Superior

---

[8]We recognize that the analogy between a permit granting authority acting under G. L. c. 40A, and a planning board acting under G. L. c. 41, is not perfect. The permit granting authority performs a sort of appellate function in that it passes on applications for relief from decisions made by the zoning enforcement officer to deny building permits and other relief. A planning board acts directly on applications for approval of definitive subdivision plans, after receiving information and approvals from the board of health and other municipal boards and agents. Nonetheless, the core functions of both remain, as stated in the text of this opinion, the regulation of land development and use to safeguard public safety and welfare.

[9]This requirement is, or course, less than the requirement imposed on a permit granting authority under G. L. c. 40A, §§ 9 and 15.

Court for further proceedings in connection with the matters raised in Count I of the plaintiffs' complaint, and for decision of the issues raised in the companion case, if those issues remain relevant, after which an appropriate supplemental judgment is to be entered.

*So ordered.*