JOHN R. DUDDY & others[1] *vs.* JAMES J. MANKEWICH
& another.[2]

No. 05-P-1011.

Suffolk. April 5, 2006. - July 19, 2006.

Present: LENK, SMITH, & GRAHAM, JJ.

*Subdivision Control,* Approval of plan, Approval not required, Planning board, Voting requirements.

The affirmative vote of a majority of a municipal planning board, and not merely a majority of a quorum, was required under G. L. c. 41, § 81P, to endorse a subdivision plan for which approval is not required. [792-794]

CIVIL ACTION commenced in the Land Court Department on March 8, 2004.

The case was heard by *Leon J. Lombardi*, J., on motions for summary judgment.

*Peter L. Puciloski* (*Richard M. Golder* with him) for the plaintiffs.

*Donald R. Pinto, Jr.*, for James J. Mankewich.

GRAHAM, J. The principal issue in this case is whether a plan submitted by the defendant James J. Mankewich to the planning board of Scituate (board), seeking endorsement under G. L. c. 41, § 81P, that approval of the plan was not required under the subdivision control law, requires an affirmative vote by a majority of the members of the board or whether a majority of a quorum of the board will suffice. We conclude that the former is required; therefore, in the absence of the requisite vote, Mankewich's plan was disapproved.

1. *Background.* Mankewich and the plaintiffs, John R. and Kathleen A. Duddy and Richard M. and Shirley Golder, are

---

[1]Kathleen A. Duddy, Richard M. Golder, and Shirley Golder.
[2]Planning Board of Scituate.

owners of lots formerly owned by William and Sarah Davidson; all of the lots have frontage on a private way called Harbor Heights Road.[3] Harbor Heights Road was established by the Davidsons prior to subdividing the land. According to subdivision plans recorded by the Davidsons in 1942 and 1945, the road was forty feet wide and extended from Front Street on the east to Hazel Avenue on the west.[4] While Harbor Heights Road, as depicted on the plans, would provide the lots fronting it with adequate access to two public roads,[5] it does not appear from the record that the Davidsons actually built any part of Harbor Heights Road.

As of October, 1945, the Davidson property had been divided into thirty different lots, most of which were conveyed between 1942 and 1945 to several different grantees.[6] In August, 1998, Mankewich obtained the disputed lots. The deeds conveying those lots did not grant Mankewich a right of way over Harbor Heights Road.

In May, 2001, Mankewich filed a plan with the board, seeking endorsement under G. L. c. 41, § 81P, that approval of the plan was not required under the subdivision control law (ANR endorsement). The plan depicted two lots, which were to be created by merging four existing lots into two.[7] At the time the plan was submitted, only the eastern portion of Harbor Heights

[3]Harbor Heights Road was first depicted on two subdivision plans filed by the Davidsons simultaneously in 1942. These plans subdivided the land into several lots, all of which fronted on Harbor Heights Road. William Davidson further subdivided the land in 1945 through the submission of four additional plans. Like the lots in the 1942 plans, these lots contained frontage on Harbor Heights Road.

[4]In 1942, the Davidsons simultaneously filed Land Court Plans No. 14568B (B Plan) and No. 14568D (D Plan). The B plan, which divided the easterly portion of the property into lots numbered 1 to 5, also showed a forty-foot wide private way that extended from Front Street to the northwest boundary of lot 4, a distance of 468 feet. The D plan depicted lots 6 through 19 and showed Harbor Heights Road extending beyond the northwesterly boundary of lot 11, but not all the way to Hazel Avenue. Land Court Plan No. 14568I (I plan), which was filed in 1945, was the first plan that showed Harbor Heights Road extending all the way to Hazel Avenue.

[5]Front Street and Hazel Avenue are both public roads.

[6]While some of the deeds contained a right of way over Harbor Heights Road, a number of them did not.

[7]Specifically, the plan would merge lot 25 with lot 26 and lot 28 with lot 29.

Road had been constructed.[8] The portion of Harbor Heights Road adjacent to Mankewich's lots and continuing west remained unimproved.[9] The board rejected this plan, in part because the lots had "inadequate access and lack of frontage," both of which are required for ANR endorsement under § 81P.[10]

Mankewich filed an identical plan with the board in 2004, after making improvements to the portion of Harbor Heights Road immediately adjacent to the four lots at issue and creating a narrow dirt and gravel road leading west of the lots. Three members of the five-member board were present at the February 26, 2004, meeting at which Mankewich's second plan was addressed. At the meeting, the plaintiffs argued that Mankewich did not have a legal right to access the portion of Harbor Heights Road leading east from his property and that the portion of Harbor Heights Road leading to the west did not provide adequate physical access. Prior to making a determination, the board reviewed materials relating to the condition of Harbor Heights Road leading from Mankewich's property in both directions and Mankewich's legal right to use the portion of Harbor Heights Road to the east of his property.

Based on the information presented at the meeting, two of the three board members who were present voted in favor of Mankewich's motion for ANR endorsement under § 81P. One voted against. While the votes in favor constituted a majority of the quorum, they represented a minority of the five-member panel. The plaintiffs sought review of the board's ANR endorsement in the Land Court. Acting on cross motions for summary judgment, a judge of that court concluded that the board's ANR endorsement "was lawful and did not exceed its authority." Judgment entered accordingly, and the plaintiffs appealed.

---

[8]This portion of Harbor Heights Road started just east of Mankewich's property line and continued to its intersection with Front Street.

[9]This portion of Harbor Heights Road, if constructed, would provide access to Hazel Avenue.

[10]The board stated three reasons for denying endorsement under § 81P: inadequate access and lack of frontage, the inability to show that Harbor Heights Road existed prior to the effective date of the subdivision control law in Scituate, and the failure to construct Harbor Heights Road or guarantee such construction by posting security.

On appeal, the plaintiffs argue that endorsement of a plan under § 81P requires votes from a full majority of the board members, and that the board exceeded its authority in endorsing the plan without such a majority. The plaintiffs request, therefore, that the Land Court's judgment granting summary judgment in the defendants' favor be vacated and that summary judgment be entered in their favor on this issue.

2. *Discussion.* The Commonwealth's subdivision control law, as set forth in G. L. c. 41, §§ 81K-81GG, requires that any person intending to make a subdivision of land in a city or town where the subdivision control law is in effect must first submit a plan of the proposed subdivision to the planning board of that city or town. See G. L. c. 41, § 81O. Section 81P of the subdivision control law provides an expedited process for persons seeking to record a plan if they believe the plan does not constitute a subdivision as it is defined in § 81L of the subdivision control law. Accordingly, if a planning board determines that a plan does not require approval under the subdivision control law, "it shall forthwith, without a public hearing, endorse thereon . . . the words 'approval under the subdivision control law not required . . . .' " G. L. c. 41, § 81P, as amended by St. 1961, c. 332. The question posed to us is whether the votes of two members out of a five-member panel are enough to support the board's endorsement under § 81P.

"In the absence of statutory restriction the general rule is that a majority of a council or board is a quorum and a majority of the quorum can act." *Merrill* v. *Lowell*, 236 Mass. 463, 467 (1920). *Clark* v. *City Council of Waltham*, 328 Mass. 40, 41 (1951). In *McElderry* v. *Planning Bd. of Nantucket*, 431 Mass. 722, 725-726 (2000), the Supreme Judicial Court determined that there is a "statutory restriction" in the subdivision control law that makes this general rule inapplicable. This determination was based on language in §§ 81L, 81U, 81V, and 81X of the subdivision control law. Based on a reading of these sections, the court concluded that approval of a definitive subdivision plan under § 81U requires votes in favor of the plan by a majority of all the board's members. *Ibid.*

Mankewich argues that the *McElderry* holding does not apply to ANR endorsements made under § 81P because this section

provides "no 'statutory restriction' or other ground for requiring that such a vote be by a majority of the entire board." To support this argument, Mankewich distinguishes the "ministerial" nature of the board's actions under § 81P from the "detailed procedure" described in *McElderry* for approving definitive subdivision plans under §§ 81T, 81U, and 81V.[11,12] *Id.* at 725. While it is true that procedures differ for these two types of determinations,[13] Mankewich's argument does not comport with the court's reasoning in *McElderry*.

The conclusion in *McElderry* rests on the court's interpretation of § 81L, which defines the term "Certified by [or endorsed by] a planning board,"[14] as it is used in the remainder of the subdivision control law.[15] The court interpreted this language as requiring an endorsement to be supported by votes from a majority of the members of the board, "or such representative of the board as 'its chairman or clerk or any other person' so authorized by a majority of the board." *Id.* at 726. That statutory requirement appears to apply to ANR

---

[11]The procedures for approving and endorsing definitive subdivision plans are contained in §§ 81T, 81U, and 81V of the subdivision control law: § 81T provides that a public hearing must be held before the board makes its determination regarding the plan and sets forth the notice requirements and procedures for the hearing; § 81U sets forth the standards and procedures for approval, modification, or disapproval of proposed plans; and § 81V sets forth the procedures for endorsing a proposed plan.

[12]We note that "the role of a planning board in acting on an application for an ANR endorsement is not so mechanical." *Gates v. Planning Bd. of Dighton*, 48 Mass. App. Ct. 394, 395-396 (2000).

[13]For example, while approval of definitive subdivision plans under § 81U requires a public hearing before a board makes its determination, no such hearing is required for ANR endorsements under § 81P. See G. L. c. 41, §§ 81T, 81P.

[14]Brackets supplied in original.

[15]General Laws c. 41, § 81L, provides:

> " 'Certified by [or endorsed by] a planning board,' as applied to a plan or other instrument required or authorized by the subdivision control law to be recorded, shall mean, bearing a certification or endorsement signed by a majority of the members of a planning board, or by its chairman or clerk or any other person authorized by it to certify or endorse its approval or other action and named in a written statement to the register of deeds and recorder of the land court, signed by a majority of the board."

endorsement by the board under § 81P just as much as it does to a definitive plan under §§ 81U and 81V.[16] In other words, although the procedures for a definitive plan are more elaborate than those for ANR endorsement, the requirement for board action — as specified under § 81L — is the same in both situations. We, therefore, find no basis for Mankewich's argument that separate voting standards should be applied to these two procedures. See *Telesetsky* v. *Wight*, 395 Mass. 868, 873 (1985) ("a statute should be read as a whole to produce an internal consistency"); *Acting Superintendent of Bournewood Hosp.* v. *Baker*, 431 Mass. 101, 104 (2000).

3. *Conclusion.* For the reasons stated above, we vacate the judgment entered on April 15, 2005, in favor of the defendants and order entry of judgment in favor of the plaintiffs.

*So ordered.*

---

[16]We find additional support for our conclusion in the second to last sentence of § 81P, which provides:

> "The planning board of a city or town which has authorized any person, other than a majority of the board, to endorse on a plan the approval of the board or to make any other certificate under the subdivision control law, shall transmit a written statement to the register of deeds and the recorder of the land court, signed by a majority of the board, giving the name of the person so authorized."