NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

22-P-581

LUCIUS HILL & another[1]

vs.

CONSERVATION COMMISSION OF FALMOUTH.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The plaintiffs, Lucius and Wendy Hill, appeal from the judgment of a Superior Court judge upholding the decision of the conservation commission of Falmouth (commission) denying an application for an order of conditions for construction of a new walkway leading to an existing dock in West Falmouth harbor. We affirm.

In addition to the Wetlands Protection Act, G. L. c. 131, § 40 (WPA), the town of Falmouth regulates wetlands through a local wetlands protection bylaw, chapter 235 of the town's code (wetlands bylaw), and the commission's Falmouth wetland regulations (FWR). The plaintiffs submitted a notice of intent under the WPA, wetlands bylaw, and the FWR, seeking permission

_____

[1] Wendy Hill.

to construct an elevated walkway to reach their existing licensed concrete ramp and float.[2]  Section 10.16 (h) of the FWR provides "general requirements" and "prohibitions" applicable to all docks and piers.  Section 10.16 (h) (1) provides that:

> "No new docks or piers or extension of an existing dock or pier may be constructed in any portion of [a] FEMA designated velocity zone (V-Zone) unless the applicant demonstrates that there will be public benefit from the project.  The Commission shall weigh the potential likelihood of damage and harm that any such dock or pier would cause during a storm event with the public benefit demonstrated by the applicant in determining whether the project should be allowed."

While the record does not reveal a specific finding, the commission and the parties have all treated the location of the proposed walkway as being in a velocity zone, and the plaintiffs do not suggest otherwise on appeal.

After providing proper notice, the commission conducted a public hearing over several days.  At one of the first hearing dates, some of the members inquired about revegetating the existing walking path after the elevated walkway is installed. The plaintiffs responded with a letter from a landscape design company recommending the planting of 200 salt marsh plugs to facilitate restoration.  At the next hearing, the plaintiffs' representative informed the commission that the plaintiffs would

---

[2] According to the commission's meeting minutes, currently there is a grass path leading to a solid stone and concrete dock, which is surrounded by knee-high water at times.

install salt marsh material as recommended by the landscape design company.  Before the commission voted, it was noted that the plan proposed an expansion of a dock in a velocity zone and that planting plugs was recommended to enhance the salt marsh after construction of the walkway.  Indeed, one of the members of the commission noted prior to the vote that "[i]t will be a better environment because the salt marsh will fill in.  It's better for Falmouth to have the project than not to have it."  Another member commented, however, that "[t]here is value of the salt marsh and the value of the velocity zone.  The structure should be prohibited because of the damage that will be done when the structure is ripped out in a storm and does harm to the resources."

On February 24, 2021, a motion was made to grant the order of conditions.  The commission voted, but the vote failed to carry a majority of the commission, and therefore, the application was considered denied.  On February 26, 2021, the commission issued a written decision signed by a majority explaining its reasons for denying the application.  The decision set forth the commission's finding that the proposed walkway is an "extension" of the existing dock and explained that no extension of a dock is allowed in the velocity zone unless the applicant demonstrates a public benefit, and the

3

plaintiffs did not demonstrate how there will be a public benefit from the proposed project.

The plaintiffs filed a certiorari appeal pursuant to G. L. c. 249, § 4, in the Superior Court. On cross motions for judgment on the pleadings, the judge granted the commission's motion, affirming the commission's decision and dismissing the appeal. This appeal followed.

Discussion. "In a review under certiorari, the court is limited to correcting 'substantial errors of law apparent on the record adversely affecting material rights'" (citation omitted). FIC Homes of Blackstone, Inc. v. Conservation Comm'n of Blackstone, 41 Mass. App. Ct. 681, 684 (1996). We review a decision allowing a motion for judgment on the pleadings de novo. Delapa v. Conservation Comm'n of Falmouth, 93 Mass. App. Ct. 729, 733 (2018). "In an action in the nature of certiorari challenging a wetlands permit decision made by a conservation commission pursuant to a local by-law, our review is limited at most to whether the commission's decision is supported by substantial evidence in the administrative record, whether the commission's action was arbitrary and capricious, and whether the commission committed an abuse of discretion or other error of law." Id. at 733-734. With these principles in mind, we address the plaintiffs' arguments.

4

1. Sufficiency of the vote. The plaintiffs first argue that when the commission's vote to grant the order of conditions did not pass, the commission erred in treating it as a vote to deny the order of conditions, and that the proper procedure would have been to conduct a second vote specifically on the question whether to deny the order of conditions. They point to several sections of the wetlands bylaw and the FWR, none of which require two votes in the circumstances presented. Cf. McElderry v. Planning Bd. of Nantucket, 431 Mass. 722, 722, 727 (2000) (in absence of affirmative vote by majority of quorum, plan disapproved).

First, the plaintiffs point to § 10.05 (9) (b) of the FWR, which discusses "substantive denials" and provides that the commission "may deny permission for any activity within areas under its jurisdiction if, in its judgment, such denial is necessary to protect the Resource area values identified in the Bylaw." It further provides that "[t]he written decision will include the reasons for the denial, citing Resource area values protected, and relevant regulations. The written decision will be signed by a majority of the Commission." Contrary to the plaintiffs' contention, all of these requirements were met, as reflected in the written decision.

In addition, the plaintiffs point to § 235-7 (B) of the wetlands bylaw, which requires that in denying a request for a

permit, "[d]ue consideration shall be given to any demonstrated hardship on the applicant by reason of denial, as presented at the public hearing," and argue that because there was no second vote, the commission did not consider any "hardship" that the plaintiffs would suffer if their application were denied. The FWR defines "hardship" specifically:

> "Hardship means the application of Chapter 235 of the Code of Falmouth to a particular piece of property, evaluated in its totality, owing to the unique characteristics of the property, that is unduly oppressive, arbitrary or confiscatory and would involve substantial economic loss to the Applicant because of the literal enforcement of the Bylaw provided that the Conditions and characteristics of the property are not the result of the actions of the Applicant, or owner, or their agents, predecessors, successors or assignees."

Nothing in the record suggests that the plaintiffs presented evidence at the hearing of a hardship within the foregoing definition. And, in their brief, they point only to their need to wade through water to reach their existing dock -- which evidence was before the commission when it voted. The commission cannot be faulted for failing to explicitly weigh the hardship on the plaintiffs when the plaintiffs presented no evidence of harm that would meet the definition of "hardship," or any evidence that they would suffer from a "substantial economic loss" because of the application of the wetlands bylaw.

The plaintiffs also argue that § 10.05 (2) of the FWR was violated because the decision was drafted after the vote and the

6

commission did not vote on the specific reasons for denial while they were at the meeting. Section 10.05 (2) requires only that any action taken by the commission pursuant to "Chapter 235 of the Code of Falmouth" "is to be taken by more than half the members present at a meeting of at least a quorum." It does not require that the drafting of a written decision occur during the meeting. Where the written decision was signed by more than half of the members that were present at the public meeting on the plaintiffs' proposal, the regulation was satisfied.

Finally, the plaintiffs argue that a second vote was required because it may not have passed and then the commission might have failed to act on the application within twenty-one days of the application and lost its jurisdiction to enforce the local bylaw and regulations. See Oyster Creek Preservation, Inc. v. Conservation Comm'n of Harwich, 449 Mass. 859, 866 (2007). That outcome, however, is belied by the written decision denying the application that was signed by a majority of the commission. In short, the requirement of a written order explaining the reasons for the denial eliminates the scenario the plaintiffs have contemplated.

2. Walkway is an extension of the existing dock. The plaintiffs next contend that the commission's conclusion that the proposed walkway is an "extension" of the existing dock is based on an erroneous interpretation of the regulations. As

7

noted above, § 10.16 (h) prohibits new structures in the velocity zone (in the absence of a public benefit) and applies to "new docks or piers or extension[s] of an existing dock or pier." A "dock" is defined in § 10.04 as "the entire structure of any Pier, wharf, walkway, bulkhead or float, and any part thereof including pilings, ramps, walkways, float and/or tie-off pilings."

The plaintiffs speculate that the prohibition on extensions of existing docks is only for "seaward extensions," not to the addition of a walkway landward of an existing dock. Velocity zones are defined in the FWR as "those portions of land subject to coastal storm flowage which are coastal high hazard areas or areas of special flood hazard extending from the inland limit within the one-hundred-year floodplain seaward supporting waves greater than three feet in height." By its very definition, velocity zones include property that may be inland from the dock. The distinction offered by the plaintiffs is not made in the bylaw and we decline to add language to it. Where the plaintiffs do not suggest that the proposed walkway will not be in a velocity zone, we discern no reason to conclude that § 10.16 (h) does not apply to it.

3. Public benefit. The commission concluded that the plaintiffs did not demonstrate how there would be a public benefit from the proposed project. On appeal, the plaintiffs

8

contend that there will be a public benefit because the project will restore some salt marsh.  They contend that salt marsh provides public benefits and assists in controlling storm damage, and that the commission should have weighed these benefits with the risks of harm from the walkway.

The meeting minutes reveals that the commission considered the planned wetlands restoration and, indeed, reveals that the commission members disagreed as to whether the restoration offset the potential harm from the elevated walkway.  It was the commission's job to determine whether a public benefit would arise, and the majority concluded that there was no public benefit.  We cannot substitute our judgment on this issue.  See Croteau v. Planning Bd. of Hopkinton, 40 Mass. App. Ct. 922, 924 (1996) ("The determination of public benefit involves a 'considerable area of discretion' and it is 'the board's evaluation . . ., not the judges, which is controlling'" [citation omitted]).  Cf. Wine v. Planning Bd. of Newburyport, 74 Mass. App. Ct. 521, 527 (2009) (burden of showing board erred in denying waiver because denial was not in public interest "nearly insupportable" [citation omitted]).  Where the commission concluded that there was no public benefit, the plaintiffs' argument that the commission did not weigh the public benefit against the likelihood of harm is unavailing.

Discerning no abuse of discretion or other error of law, we affirm the judgment.

Judgment affirmed.

By the Court (Sullivan, Desmond & Singh, JJ.[3]),

*Joseph F. Stanton*

Clerk

Entered:  August 2, 2023.

---

[3] The panelists are listed in order of seniority.